UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| TAWANNA WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 7:19-CV-115-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| BIG LOTS STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

## I. Introduction

Plaintiff Tawanna Wright sued her former employer Big Lots Stores, Inc., in Pike County Circuit Court alleging age and race discrimination (Counts I and II, respectively) in violation of the Kentucky Civil Rights Act. DE 1-1 at 4-5. Big Lots timely removed based on diversity. DE 1 at 1. Big Lots now moves for summary judgment pursuant to Fed. R. Civ. P. 56. DE 24 at 1. In response, Wright concedes her age discrimination claim but maintains that her non-retention during the 2019 Big Lots RIF was race based. DE 25 at 6.

In a context of this type, to defeat a defendant's properly supported motion for summary judgment on a discrimination claim, a nonmoving plaintiff must identify sufficient evidence for a jury to reasonably reject the employer's explanation for its facially neutral employment decision. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009). Here, Wright offers only "[c]onclusory allegations, speculation, and unsubstantiated assertions[.]" *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003). Accordingly, the Court **GRANTS** Defendant's motion for summary judgment.

## II.     Background

Prior to her termination, Plaintiff Tawanna Wright was one of two Assistant Team Leaders (ATL) at the South Williamson, Kentucky Big Lots. DE 24-3 ¶¶ 9-11 (Bishop Dec.).[1] The store's other ATL was a Caucasian woman named Delilah Harrison. DE 24-1 (Wright Dep. 39:13-40:3);[2] DE 24-3 ¶¶ 9-11.  Big Lots planned and implemented a nationwide reduction in force (RIF) in 2019, targeting stores at a certain financial level.  *See* DE 24-3 ¶¶ 2-3.  The RIF would eliminate dual ATLs, moving one of two store ATLs per affected branches to a lower position.  Big Lots had a decisional chain and matrix for selection that progressively involved leadership assessment from the District Team Leader, then the 3-year average from Store Team Leader reviews of the ATLs, then tenure.  *See id.* ¶¶ 4-5.  Wright does not impugn the RIF generally or the selection criteria generally.

In August 2019, Big Lots told Wright that her position was being eliminated. DE 24-2 ¶ 5 (Barfield Dec.); DE 24-1 (Wright Dep. 74:6-10). Big Lots explains the termination as part of the described RIF. DE 24 at 3-4; DE 24-3 ¶¶ 2-10. Because the South Williamson store fell within the RIF fiscal threshold, Big Lots, pursuant to its restructuring policy, retained Harrison over Wright because Harrison had a higher average performance review score. DE 24 at 3-4; DE 24-3 ¶¶ 2-10.[3] The statistical distinction between the two women, both long-tenured employees, was slight,

---

[1] Assistant Team Leader is Big Lots's title for an assistant store manager. DE 24 at 2. Accordingly, the two terms are interchangeable.

[2] Throughout, the Court cites to the internal deposition pagination (in addition to the CM/ECF page designations) for cited depositions. Applied here, DE 24-1 at 5-6 becomes DE 24-1 (Wright Dep. 39:13-40:3). The Court also notes that the parties submitted partly duplicative deposition excerpts. *See*, *e.g.*, DE 26-3 (Wright Dep. Offered with Defendant's reply) and DE 25-1 (Wright Dep. Offered in Plaintiff's Response).

[3] Harrison's weighted average was 2.8, while Wright's was 2.6. DE 25 at 3; DE 25-2. The RIF selection first looked to DTL leadership assessment, then annual performance average over a set term. DE 24 at 3; DE 24-3 ¶¶ 2-7. Because Wright and Harrison had the same score on the leadership assessment, only the performance reviews are relevant. DE 24-3 ¶ 11.

boiling down, per Wright's argument, to one-level gradations from two sub-categories within the 2016-17 review period.

Wright argues that those performance reviews were tainted by the racial bias of the man who conducted them: Charles Marcum, the store team leader (STL). DE 25 at 4. The chief bias evidence she offers are the performance reviews themselves. Specifically, Wright points to Harrison's higher score in two categories of each employee's 2016 performance review: store standards and metrics. *Id.* at 2-6. Wright argues that those categories properly measured the store's performance, not its individual employees, and therefore the scores should have been the same for Wright and Harrison since they worked at the same store. *Id.*; *see also* DE 25-3 at 2-4 (Wright 2016 Performance Review); DE 25-5 at 2-4 (Harrison Review) (describing Wright as meeting expectations in the Store Standards and Metrics categories and Harrison as exceeding expectations in both categories). Wright offers the different scores as evidence of Marcum's bias and then seeks to use that asserted bias, and the causal role it played in this employment decision, to support her KCRA claim. DE 25 at 4.[4]

Wright's argument assumes the premise that the scores should have been the same. Big Lots insists that is not the case. To argue her side, Wright leans almost entirely on the deposition of Billie Jo Bishop, a Big Lots human resources employee. DE 25 at 4-5; *see also* DE 25-4 (Bishop Dep.); DE 24-3. In that deposition, Bishop was unable to explain why Wright and Harrison had different scores in those two categories. DE 25-4 (Bishop Dep. at 41:11-14). Wright offers Bishop's inability to explain the different scores as evidence that the scores should have been the same. DE 25 at 5. In her sur-reply, Wright also highlights Marcum's admission that he started

---

[4] The parties do not dispute that the different scores in the two categories (or, at least, that the cumulative average distinctions) were the difference here. DE 26 at 3 (citing DE 25-4 (Bishop Dep. 32:8-14)); DE 29 at 1.

using only objective, store-wide standards for the categories in 2017 and 2018 at Big Lots's direction. DE 29 at 1-2 (citing DE 26-2 ¶ 8). To supplement her argument with further evidence of Marcum's bias, Wright cites to her own deposition, in which she claimed that Marcum gave Harrison a better work schedule and once responded tersely to Wright's complaint about having to work soon after being released from the hospital. DE 25 at 4 n.3 (citing Wright Dep. 49:3-7, 50:20-21).[5] Wright does not include any of these substantiating pages in the record.

As stated, Big Lots denies that Harrison and Wright should have had the same score in the store standards and metrics categories. Instead, it contends—while conceding that Marcum switched to store-wide metrics in 2017 and 2018—that the disputed 2016 scores measured (per Marcum) the employee, not the store, and therefore the differences between Harrison and Wright appropriately reflect Marcum's properly supported view that Wright was a good employee while Harrison was an excellent one. DE 26 at 4. To corroborate Marcum's view, Big Lots highlights examples of Harrison's exemplary job performance (*i.e.,* proactively walking the floor and assisting with customers beyond the scope of her specific duties) while noting that Wright "rarely made an additional effort to exceed the duties and expectations of her role." *Id.* at 4-5 (citing DE 26-2 ¶7). Big Lots also rejects Wright's characterization of the Bishop deposition and argues that Wright took Bishop's statements out of context or quoted them incompletely. As support, Big Lots offers a larger portion of Bishop's deposition to show that Bishop declined to offer an authoritative opinion on Marcum's scoring because she did not know his methodology and was not, as Wright suggests, corroborating the idea that the scores should have been identical. DE 26 at 3-4 (citing

---

[5] Although Wright cites to pages 49 and 50 of her deposition, the section of the deposition submitted with her response in opposition cuts off at page 48. *See* DE 25-1 at 3.

DE 26-1 (Bishop Dep. 42:8-11)) ("I can't speak to the specific rating on these two employees because I wasn't part of the appraisal review process for this particular store or district.").

Notably, Wright's lead theory in the Complaint was disparate impact age discrimination. She abandoned that in the briefing, clinging instead to Count II and race. Even there, the Complaint did not reference Marcum or any particular acts by him. Rather, Count II claims that "[b]y treating Wright less favorably than her non-minority counterparts and demoting her . . . Big Lots discriminated against Wright . . . . based on race." DE 1-1 at 5, Complaint ¶¶ 19-20. Wright made the odd choice not to depose Marcum, the alleged source of racial animus. His declaration stands without opposition.

### III. Standard of Review

A court may grant a motion for summary judgment only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, the Court must now determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2507 (1986).

The moving party carries the initial burden of demonstrating absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If it meets that burden, the non-moving party must "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). That evidence must be enough for a jury to reasonably find in its favor. *Anderson*, 106 S. Ct. at 2514. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 106 S. Ct. at 2553. Accordingly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading[.]"

*Anderson*, 106 S. Ct. at 2514. Nor can the nonmoving party succeed merely by casting "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 106 S. Ct. 1348, 1356 (1986). The Court need not independently probe the record in search of relevant facts. *Penn, LLC v. Prosper Bus. Dev. Corp.*, 600 F. App'x 393, 403 (6th Cir. 2015).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" fact dispute exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

IV.   ANALYSIS

Wright sues under the Kentucky Civil Rights Act (K.R.S. § 344.040) alleging disparate treatment based on race. DE 25 at 6. The KCRA uses the same claims analysis as Title VII of the federal Civil Rights Act of 1964. *Beatty v. Frito-Lay, Inc.*, 429 F. Supp. 3d 342, 347 (E.D. Ky. 2019), *appeal dismissed*, No. 20-5041, 2020 WL 1856400 (6th Cir. Feb. 25, 2020) (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000)); *Snowden v. Kentucky Smelting Tech., Inc.*, No. 2009-CA-001231-MR, 2010 WL 2218735, at *4 (Ky. Ct. App. June 4, 2010). Accordingly, Wright's ultimate burden is to establish that Big Lots "'had a discriminatory intent or motive' for taking a job-related action." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2672 (2009) (quoting *Watson v.*

*Fort Worth Bank & Trust,* 108 S. Ct. 2777, 2784 (1988)).[6] She can offer direct or circumstantial evidence to support the claim. *Glass v. Tradesmen Int'l, LLC*, No. 5:19-CV-01331, 2020 WL 7129594, at *7 (N.D. Ohio Dec. 4, 2020) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 892 (6th Cir. 2012)).

Wright, with no direct proof of racial animus, builds her argument around circumstantial evidence. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (explaining that circumstantial evidence requires the fact finder to infer that an adverse employment action was motivated by discriminatory animus). The chief evidence cited are Wright's and Harrison's different scores in the two categories of each employee's 2016 performance review. Wright offers the discrepancy to support the inference of Marcum's racial bias and to reject the legitimacy of Big Lots's reliance on those performance review scores to choose Harrison over Wright. As further evidence of Marcum's bias, Wright points to her uncorroborated allegation (from an untendered part of the record) that Marcum gave Harrison a better, more flexible schedule than her and once responded tersely and unsympathetically to Wright's complaint about having to work soon after leaving the hospital. DE 25 at 4 n.3 (citing Wright Dep: 49:3-50:20-21).

Circumstantial evidence offered in support of a discrimination claim triggers the three-step *McDonnell Douglas* burden shifting analysis. *Pelcha*, 988 F.3d at 324–25 (citing *McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817 (1973)). At step one, the plaintiff establishes a *prima facie* case of discrimination by demonstrating that "1) he is a member of a protected class; 2) was qualified for the job; 3) he suffered an adverse employment decision; and 4) was replaced by a

---

[6] Her specific burden as a non-moving plaintiff in a motion for summary judgment is discussed below. *McKinnon v. L-3 Commc'ns Corp.*, 814 F. App'x 35, 49 (6th Cir. 2020) ("[T]o survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale.") (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 594 (6th Cir. 2012) (internal quotation marks omitted).

person outside the protected class or treated differently than similarly situated non-protected employees." *Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001); *see also Escalera v. Bard Med.*, 373 F. Supp. 3d 793, 800 (W.D. Ky. 2019), *case dismissed*, No. 19-5383, 2019 WL 3226309 (6th Cir. July 2, 2019). An employee who is terminated as part of a reduction in force "must meet a heightened standard to prove his *prima facie* case" by "present[ing] additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled him out for discharge for impermissible reasons." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 81 (6th Cir. 2020) (quoting *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536–37 (6th Cir. 2014)). This first step, as generally described, is "easily met." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 653 (6th Cir. 2012) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)) (internal quotation marks omitted). At step two, the burden of production shifts to the defendant to show "a legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 654.

If the employer meets that bar, the burden of production at the third step shifts back to the plaintiff to show that the employer's stated reason is pretextual cover for a decision that was in fact discriminatory. *Id*. Plaintiffs demonstrate pretext by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his [discipline], or (3) that they were insufficient to motivate discharge." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (quoting *Manzer v. Diamond Shamrock Chemicals. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)) (emphasis omitted), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343 (2009). The three categories function as a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen*,

8

580 F.3d at 400 n.4). "[A]t bottom the question is always whether the employer made up its stated reason to conceal intentional" discrimination. *Id.* (quoting *Chen*, 580 F.3d at 400 n.4) (internal quotations omitted). Accordingly, a plaintiff may show pretext through any evidence that sufficiently "challenges the reasonableness of the employer's decision[.]" *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 612 (6th Cir. 2019).

At the summary judgment stage, the *McDonnell Douglas* framework requires a nonmoving plaintiff to "produce enough evidence to support a *prima facie* case and to rebut, but not to disprove, the defendant's proffered rationale." *McKinnon*, 814 F. App'x at 49 (quoting *Griffin*, 689 F.3d at 593) (internal quotation marks omitted). Accordingly, while Wright does not now need to conclusively disprove Big Lots's explanation, there should be a factual basis for a jury to "reasonably doubt [it]." *Redlin*, 921 F.3d at 612 (quoting *Chen*, 580 F.3d at 400 n.4) (internal quotation marks omitted). "[I]f the plaintiff 'only created a weak issue of fact as to whether the defendant's reason was untrue' and there is ample evidence to support the employer's position[,]" the motion for summary judgment should be granted. *Chen*, 580 F.3d at 400 n.4 (quoting *Reeves v. Sanderson Plumbing Products Inc.,* 120 S. Ct. 2097, 2109 (2000)). "Conclusory allegations of discrimination are insufficient, however, to sustain a claim[.]" *Carter v. Toyota Tsusho Am., Inc.*, No. 5:10-132-JMH, 2012 WL 786344, at *6 (E.D. Ky. Mar. 9, 2012) (citing *Allen v. Mich. Dep't of Corrections,* 165 F.3d 405, 415 (6th Cir. 1999)), *aff'd,* 529 F. App'x 601 (6th Cir. 2013); *see also Burnette v. Wilkie*, No. 19-4015, 2020 WL 6121448, at *2 (6th Cir. Aug. 4, 2020) (affirming district court's grant of defendant's motion of summary judgment noting that plaintiff provided no evidence other than her own speculation of racial discrimination).

Applied here, Wright satisfies the first, "easily met" step of the *McDonnell-Douglas* framework, even in the context of the RIF. She is a member of a protected class. Her years of

9

service, positive performance reviews and designation as "correctly placed" show that she was qualified for the ATL job. *See, e.g.*, DE 25-2. She suffered an adverse employment action when her position was eliminated; hers was the slot not retained. The comparator-ATL who kept her job at Wright's expense is Caucasian. *See Newman*, 266 F.3d at 406.[7]

Next, Big Lots meets its burden at step two by offering a legitimate, nondiscriminatory reason for the termination: Big Lots, pursuant to a national restructuring, reduced the number of ATLs at the South Williamson location because of its sales volume, and chose to retain Harrison over Wright because of Harrison's higher score on her performance review. DE 24-3 ¶¶ 2-11; *see also Ondricko*, 689 F.3d at 653. The RIF applied a set of defined, sequential criteria (independent of the RIF process itself) across the pool of ATLs to select which of the employees would face demotion or downsizing.

The burden of production therefore swings back to Wright to show that Big Lots's proffered reason is pretextual, merely cover for discrimination. On that determinant issue, the Court finds that Wright has not identified sufficient evidence for a jury to reasonably doubt Big Lots's explanation. *Redlin*, 921 F.3d at 612. She offers only speculation and conclusory allegations. *See, e.g., Carter*, 2012 WL 786344, at *6; *Burnette*, 2020 WL 6121448, at *2.

---

[7] Big Lots argues in its initial motion for summary judgment that Wright cannot state a *prima facie* case because similarly situated Caucasian employees in Wright's district were also let go as part of the reorganization. DE 24 at 10. Defendant cites to *Young v. Parke-Davis & Co.*, No. 88-2217, 1989 WL 98498, (6th Cir. 1989) as support. *Id.* In *Young*, the plaintiff could not make out a *prima facie* case because he was unable to present "evidence proving that similarly situated non-minorities were retained[.]" 1989 WL 98498, at *4. *Young* does not apply here. Whether two employees are similarly situated "depends on the circumstances of the individual case." *Chattman*, 686 F.3d at 348. The "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly-situated." *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998)) (internal quotations omitted). Here, Harrison and Wright were the store's only two ATLs. Wright, an African American, lost her job while the Caucasian Harrison kept hers. These facts constitute a *prima facie* case for racial discrimination in the RIF context.

Accordingly, Defendant's motion for summary judgment should be granted because Wright has offered only a non-triable "weak issue of fact as to whether [Big Lots's] reason was untrue[.]" *Chen*, 580 F.3d at 402.

Wright builds her claim on the premise that Wright and Harrison should have had the same scores in the store standards and metrics categories of their 2016 reviews. Therefore, the fact that they were not the same is, to Plaintiff, evidence of Marcum's bias. And that bias invalidates the empirical difference as the basis for the employment decision. However, Wright's central premise lacks any factual support. The Bishop deposition, as Big Lots notes, does not actually corroborate Wright's offered interpretation when read in context. Bishop was unable to explain the difference in scores because she did not know Marcum's methodology. Bishop does appear to acknowledge that some scores and metrics are themselves store-wide and not necessarily reflective of the individual employee, but she at no point endorses the idea that Harrison and Wright should have had the same scores on the 2016 store standards and metrics categories. DE 25-4 at 5 (Bishop. Dep. 41:11-42:23).[8] Wright put her theory of the case to Bishop several times, but each time Bishop reiterated that she could not "speak to the specific rating on [Wright and Harrison] because [she] wasn't part of the appraisal review process for this particular store or district." *Id.* at 42:2-11; *see also* DE 26 at 3.

It is not inherently suspicious for Marcum to assign individual marks on a collective metric. The ATLs had different foci, as their distinct titles show. Thus, Marcum may logically have assessed how much each management member contributed to the store's performance in a given

---

[8] The Court further notes the exact phrasing of the question here. "[I]t's a store-wide score *not necessarily* an individual score, correct?" DE 25-4 (Bishop Depo. 41:12-13) (emphasis added). The use of the adverb "necessarily" dilutes the probative value of the question, from Wright's perspective. Further, whatever limited value that section's ambiguity may have offered to Wright, Bishop's later statements vitiate. *Id.* at 42:8-17.

year. Not every player on a team gets the same credit for the team's overall record. Marcum specifically avers that in 2016 he individualized that part of the evaluation, and nothing in the record conflicts with that history.

Marcum does say he altered this methodology in 2017 and 2018 at Big Lots's direction. DE 29 at 1; DE 26-2 ¶ 8. The existence of a Big Lots policy in effect in 2016 that required store-specific scoring for the two categories in dispute could weigh in favor of Wright's claim. However, Wright, despite having the benefit of discovery, points the Court to no evidence whatsoever that any such policy existed. Instead, she offers only her own inference that Marcum's use of the same review template for the years 2016, 2017, and 2018[9] suggests the policy was in place for all three. DE 29 at 2. Bishop's deposition does not reveal the existence of the policy either. And Wright does not dispute Big Lots's claim that she never served discovery or sought to depose Marcum to better develop the record on this theory. DE 26 at 4 n. 3. In her sur-reply, Wright declares that she proved, through documentary evidence and Big Lots's own admissions, that her review scores are demonstrably false. DE 29 at 2. This is not the case, and a declaration by counsel is not, regardless of its bravado, proof.

The only other support Wright offers to demonstrate Marcum's bias is the inference suggested by Wright's comments about Harrison's preferrable schedule and Marcum's terse response to Wright's complaint about working soon after being released from the hospital. DE 25 at 4 n.3. As noted, the cited pages are not included in Wright's filing. DE 26-3. The unsubstantiated allegations are not enough to defeat the motion for summary judgment. *Carter*, 2012 WL 786344, at *8. Wright did not produce (and provides no evidence of an effort to produce) any independent

---

[9] Actually, section 1 of the evaluation does change format slightly from 2016 to 2017, eroding the point. *Compare* 25-3 at 2-5, *with* 24-3 at 13-16.

evidence that might support either allegation (*e.g.*, copies of each employee's schedule, depositions of, or even attempts to depose, other current or former employees who might be able to speak to the contentions or Marcum's bias). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 106 S. Ct. at 2553 "Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." *Gooden*, 67 F. App'x at 895. Wright has failed to offer a sufficient evidentiary basis for a reasonable jury to find on her behalf; the Court reaches its conclusion without weighing the evidence or making any credibility determinations. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

The Court observes several additional aspects of the case that negate any racial inference about Marcum's animus and fortify dismissal.

First, Wright omitted any reference to mistreatment by Marcum in her Complaint and in her written discovery. She, in fact, swore in an interrogatory answer and confirmed in her deposition that the only basis for the race claim was "that the severance program had a disparate impact on racial minorities[.]" DE 26-3 (Wright Dep. 52:1-2) (quoting also the discovery). She may have thought Marcum treated Harrison as his "favorite," but testified: "Mr. Marcum . . . was always good to me." DE 25-1 (Wright Dep. 48:16-7).

Second, Big Lots employed both women for over twenty-five years. Big Lots (and Marcum) evaluated both women as valuable and contributing employees. It would be hard to look over the three-year window and view Marcum as in any way negative toward Wright. There are

not derogatory entries in any categories.[10] Marcum, in some instances, rated Wright higher than she rated herself. *See* 25-3 at 3 (Team Development). As to the entries she complains about, the Court notes that Marcum's assessments matched precisely with Wright's self-views. Further, there is another sub-category (the "Jennifer's Experience" section) where Marcum rated Harrison a grade above Wright. *Compare* 25-3 at 2, *with* 25-5 at 2. This distinction, unassailed by Wright, offers another sorting basis that corroborates the validity of the selection. The record shows without contradiction that Big Lots appreciated both ATLs; the RIF let it keep but one, and the choice did not involve a racial animus.[11]

Third, the key evaluative period Wright targets is 2016-17. This was two+ years before the RIF. Wright posits that, despite giving her glowing reviews in the interim, Marcum racially distinguished between Wright and Harrison in two review sub-parts long prior to the RIF in order to deny Wright future retention. Summary judgment inferences must be plausible, and the bridge here is one too far.

Finally, Wright contends that the scoring should have been the same between the two ATLs in 2016. "Had Mr. Marcum scored the two employees . . . as he was supposed to, Ms. Wright and Ms. Harrison would have received identical scores." DE 29 at 3. The result under the RIF? Big Lots would have treated Wright and Harrison as tied at steps one and two and then employed the

---

[10] Most reviews have some degree of subjectivity. Subjectivity is not, itself, pretext. *Laul v. Los Alamos Nat'l Lab'ys*, 714 F. App'x 832, 838 (10th Cir. 2017) ("And even if Selvage did rely on subjective criteria, that is insufficient by itself to show pretext."); *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 976 (8th Cir. 2012) ("[B]ut reliance on subjective criteria is not enough on its own to prove pretext. A supervisor's assessment of a particular employee's performance is necessarily subjective, and Guimaraes's previous positive reviews relied on similarly subjective criteria. A reasonable jury could find the use of subjective criteria in the PAP relevant, but not sufficient on its own, to raise an inference of discrimination.") (internal citation omitted).
[11] Marcum also demoted or severed two white ATLs in the District as part of the RIF. *See* DE 24-1 (Wright Dep. 46:12-15) (Wright's description).

third test, longevity. DE 24-3 ¶ 6. Harrison, the longer-tenured worker (DE 24-3 at 4), would still have retained the ATL post.

Wright understandably felt bruised by the loss of a quarter-century position. Race, though, was not the reason for the job action. Big Lots had a legitimate, non-discriminatory basis that Wright has not effectively impugned. With no triable factual issue presented, the Court finds summary judgment for Big Lots required.

## V. CONCLUSION

The Court **GRANTS** Defendant's motion, DE 24. The Clerk, per the contemporaneous Judgment, shall terminate this matter from the Court's active docket.

This the 18th day of May, 2021.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge